IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Jomela Islam, | ) | No. CV-11-515-PHX-PGR (LOA) |
|         Petitioner, | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| Katrina Kane, | ) | |
|         Respondent. | ) | |

This matter arises on Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  (Doc. 1)  Petitioner claims that her prolonged detention pending her removal violates the holding in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  Respondent filed an Answer, doc. 7, to which Petitioner replied, doc. 10.  For the reasons set forth below, the Petition should be granted.

**I. Background**

Petitioner is a native and citizen of Bangladesh who was admitted into the United States on November 9, 1995 on a visa.  (Respondents' Exh. 2)

Years later, on December 12, 2006, Petitioner was convicted in the Superior Court of the State of California, County of Los Angeles, of petty theft with priors, a felony, in violation of California Penal Code Section 666.   Petitioner was sentenced to sixteen months imprisonment.  (Respondents' Exh. 3)  On September 12, 2007, Petitioner was convicted in the Superior Court of the State of California, County of Los Angeles, of petty theft with priors, a felony, in violation of California Penal Code Section 666.  Petitioner was sentenced

to sixteen months imprisonment.  (Respondents' Exh. 4)

Petitioner was subsequently placed in removal proceedings on February 5, 2008, when DHS served Petitioner with a Notice to Appear, charging her with removability under § 237(a)(2)(A)(ii) of the Immigration and Nationality Act ("INA"), as an alien who, at any time after admission, has been convicted of crimes involving moral turpitude. (Respondents' Exh. 6)

On January 9, 2009, the Government served Petitioner with Form I-261, Additional Charges of Inadmissibility/Deportability, and charging her with removability under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), an alien convicted of an aggravated felony as defined in INA § 101(a)(43)(G), a crime of theft for which the sentence of imprisonment was at least one year.  (Respondents' Exh. 7)

On March 5, 2009, the Immigration Judge ("IJ") sustained the charges of removal. The IJ denied all forms of relief and ordered Petitioner removed to Bangladesh. (Respondents' Exhs. 8, 9)   On April 3, 2009, Petitioner appealed the IJ's ruling to the Board of Immigration Appeals ("BIA").  (Respondents' Exh. 10)  On August 31, 2010, the BIA dismissed the appeal.  (Respondents' Exh. 11)

On September 17, 2010, the Government served Petitioner with a Notice to Alien of File Custody Review, an Instruction Sheet to Detainee Regarding Requirement to Assist in Removal, and Form I-229(a), Warning for Failure to Depart.  (Respondents' Exh. 12) On December 13, 2010, DHS served Petitioner with a Decision to Continue Detention. (Respondents' Exh. 14)

On September 16, 2010, the Government requested a travel document from the Consulate General of Bangladesh. (Respondents' Exh. 16) On November 29, 2010, the Government made a second request for a travel document from the Consulate General of Bangladesh.  (Respondents' Exh. 17) On November 30, 2010, the Bangladesh Vice Consul spoke with Petitioner telephonically.  (Respondents' Exh. 15 at ¶ 11)   On January 25, February 25, March 30, and May 4, 2011, the Bangladesh Vice Consul advised the

Government that Petitioner's travel document request was still pending.  (Respondents' Exh. 15 at ¶ 13-14, 16-17)

On May 5, 2011, the Government requested assistance in obtaining a travel document from the Headquarter Travel Document Unit ("HQTDU").  (Respondents' Exh. 15 at ¶ 18) On June 10, 2011, HQTDU advised the Government it would request an update on Petitioner's travel document request from the Bangladesh Consul.  (Respondents' Exh. 15 at ¶ 20)

## II. Analysis

### A. Petitioner's Claim

Petitioner asserts that her continued detention following the issuance of a final removal order violates due process as discussed in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Respondent contends that Petitioner has not established that there is good reason to believe that she will not be removed in the reasonably foreseeable future, and that the mere passage of time is not sufficient to grant Petitioner relief.

### B. Governing Statutes

Several statutes provide for the detention of aliens under different circumstances. Section 236(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226, governs the initial apprehension and detention of aliens for purposes of determining whether an alien should be removed from the United States. 8 U.S.C. § 1226. Section 1226(c) provides that, except in limited circumstances, aliens convicted of qualifying crimes must be detained pending removal proceedings.  *Id.*

After the completion of removal proceedings, the detention, release and removal of an alien who has been ordered removed is governed by 8 U.S.C. § 1231(a). *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001) (referring to § 1231 as the "post-removal-period detention statute.").  Pursuant to § 1231(a)(2), an alien must be detained during the removal period established in § 1231(a)(1).  *See* 8 U.S.C. § 1231(a)(1)(B) (stating that "the removal period begins on the latest of the following: (i) The date the order of removal becomes

administratively final.  (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order. (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from custody or confinement.").

Section 1231(a)(6) grants the Attorney General the discretionary authority to detain certain classes of aliens "beyond" the removal period, or to release them subject to terms of supervision in § 1231(a)(3).  *Prieto-Romero v. Clark*, 534 F.3d 1053, 1059 (9th Cir. 2008).

**C. *Zadvydas v. Davis*, 533 U.S. 678 (2001)**

When an alien is found removable and a final order of removal had been entered, the Attorney General ordinarily secures removal of that alien during a 90-day statutory "removal period" during which the alien is detained.  *See* 8 U.S.C. § 1231(a)(1)(A)-(B).  However, many aliens cannot be removed within the ninety-day period for a variety of reasons.

In *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001), the Supreme Court held that the post-removal-period detention provision, 8 U.S.C. § 1231(a)(6), implicitly limits an alien's detention to a "period reasonably necessary to bring about that alien's removal" and does not permit indefinite detention.  *Id.* at 689.  The Court recognized that the purpose of the statue was to guarantee the alien's presence at the time of his removal.  533 U.S. at 699.  However, the Due Process Clause applies to aliens who have entered the United States, and the Court found that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem."  *Id.* at 690.   The Court held that six months is a presumptively reasonable period of post-removal-order detention.  *Id.*  at 701.  The Court established a burden-shifting analysis to assist habeas courts in determining whether a period of post-removal-order detention in excess of six months is permissible.   First, the alien must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701.  If the alien meets this burden, "the Government must respond with evidence sufficient to rebut that showing."  *Id.*  "[F]or detention to remain reasonable, as the period of prior post-removal confinement grows, what

counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* at 701. The Court clarified that, under its holding, "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Therefore, to state a claim under *Zadvydas*, the alien not only must show post-removal-order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.*; *See also*, *Clark v. Martinez,* 543 U.S. 371 (2005). Mindful of the foregoing, the Court will consider Petitioner's claim.

### D. Application of *Zadvydas*

Here, Petitioner was placed in removal proceedings when a Notice to Appear was issued on February 5, 2008. On March 5, 2009, an Immigration Judge sustained the charges of removal and ordered Petitioner removed to Bangladesh. Petitioner appealed to the BIA. The BIA dismissed the appeal on August 31, 2010. Thus, the 90-day statutory removal period set forth in 8 U.S.C. § 1231(a)(6) expired on November 29, 2010, and the presumptive 6-month period expired on February 27, 2011. *See* 8 U.S.C. § 1231(a)(1)(B) (stating that "the removal period begins on the latest of the following: (i) The date the order of removal becomes administratively final. (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order. (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from custody or confinement."). To date, since her removal order became final, Petitioner has spent ten months in custody awaiting removal, approaching twice the amount of time that the Supreme Court considered presumptively reasonable in *Zadvydas*.

Petitioner argues that it is unlikely she will be removed in the reasonably foreseeable future because Bangladesh does not generally issue travel documents. She explains that ICE's own statistics indicate that Bangladesh is one of fifteen countries least likely to issue travel documents for repatriation. (Doc. 10 at 4) She further argues that the government has not submitted any evidence, other than its own statements, that it has made progress in

obtaining a travel document from the Consulate of Bangladesh.  Although the government

has made several requests for travel documents, the only response it has received from the

Bangladesh Consulate regarding the status of those requests is that the travel document

request is "pending."  (Doc. 7, Exh. 15)

The period of Petitioner's post-removal-order detention is nearing twelve months,

thus the "reasonably foreseeable future" must be near.  *Shefqet v. Ashcroft*, No. 02 C 7737,

2003 WL 1964290, * 4 (N.D. Ill., April 28, 2003) (granting habeas relief when post-

removal-order detention exceeded 17 months).  It is undisputed that Petitioner has

cooperated with removal efforts.  Petitioner has submitted evidence that Bangladesh is one

of fifteen countries identified by ICE as least likely to issue travel documents.  Here,

although the government has requested a travel document, there is no indication that such a

document is forthcoming.  Repeated statements from the Bangladesh Consulate that the

travel document request is pending does not provide any insight as to when, or if, that

request will be fulfilled.  The Court finds that Petitioner has established that there is good

reason to believe that there is no significant likelihood that she will be removed to

Bangladesh in the reasonably foreseeable future.  Accordingly, the burden shifts to

Respondent to rebut that showing with sufficient evidence.  *Zadvydas*, 533 U.S. at 701.

Respondent argues that the mere passage of time does not support a finding that

Petitioner's removal is not reasonably foreseeable.  Respondent also claims that DHS is

making efforts to effectuate Petitioner's removal. The only evidence that DHS has attempted

to obtain travel documents for Petitioner is the Declaration of Deportation Officer Garibay

who states that:

> On September 29, 2010, [the Office of Enforcement and Removal Operations
> "ERO"] made a formal request to the Bangladesh Consulate in Los Angeles
> for assistance in obtaining a travel document for Islam. . . .

> On October 15, 2010, ERO contacted Bangladesh Vice Consul telephonically
> and he confirmed the that the request for a travel document for Islam had
> been received.

> On November 29, 2010, the ERO made a second formal request to the

Bangladesh Consul for a travel document.

> On November 30, 2010, ERO contacted the Bangladesh Vice Consul telephonically and requested an update on the travel document. The Vice Consul stated the request was still pending. That same day, the Consulate contacted ERO and requested an opportunity to speak with Islam. The Vice Consul spoke with Islam that same day.

(Respondent's Exh. 15, ¶¶ 8-11)  Garibay further declares that, in response to inquiries from ERO, on January 27, February 25, March 30, and May 4, 2011, the Bangladesh Vice Consul informed ERO that the travel document request was still pending.  (Respondents' Exh. 15, ¶ 13, 14, 16, 17)  Garibay's general statements that a travel document request for Petitioner has been pending since September, 2010 do not indicate that Petitioner's removal will be effected in the reasonably foreseeable future.  DHS has not offered any specific evidence on the progress of its efforts to remove Petitioner.  *See Azad v. Interim Dist. Director, New York*, 2009 WL 2569132 (S.D.N.Y., August 19, 2009) (finding that ICE failed to rebut a showing by petitioner of a good reason to believe that there was no significant likelihood of removal in the reasonably foreseeable future, where ICE's contacts with local Consulate of Bangladesh resulted only in statements that Consulate was awaiting confirmation of information alien provided in travel document request.); *Mohamed v. Ashcroft*, 2002 WL 32620339 (W.D.Wash., April 15, 2002) (granting petitioner habeas corpus relief where government failed to offer any "specific information regarding how or when [it] expect[ed] to obtain the necessary documentation or cooperation from the Ethiopian government."). Other than stating that the travel document request is "pending," Respondent provides no details about the status of Petitioner's travel document, such as whether DHS has received any assurances that travel documents are forthcoming, or whether the Bangladesh Consulate is even willing to issue a travel document for Petitioner.  *Shefqet*, 2003 WL 1964290, at * 5 (citing *Thompson v. INS*, 2002 U.S. Dist. Lexis, 23936, at * (E.D.La., Sept. 13, 2002) (finding that government failed to meet burden that removal is reasonably foreseeable in part because there was no evidence that the government of Guyana had responded to the request for travel documents)).  Sufficient time has passed for the DHS to obtain a travel document

because Petitioner's order of removal was issued over a year ago. *See Kacanic v. Elwood*, No. CIV A 02-8019, 2002 WL 31520362, at * 5 (E.D.Pa., November 8, 2002) (INS failure to make timely efforts to remove petitioner one factor in finding that petitioner's removal was not likely in the reasonably foreseeable future.) Petitioner need not show that removal is impossible. *Zadvydas*, 533 U.S. at 702. Although there may exist some possibility that Petitioner could be removed, her post-removal-order detention has been sufficiently long that an unsubstantiated possibility does not satisfy Respondent's burden. *Mohamed*, 2002 WL 32620339, at * 1.

**III. Conclusion**

Petitioner has been detained nearly a year after her removal order became final. She has shown that there is good reason to believe that there is no significant likelihood of her removal in the reasonably foreseeable future. Respondent has not rebutted this showing with sufficient evidence. *Zadvydas*, 533 U.S. at 696.

In accordance with the foregoing,

**IT IS RECOMMENDED** that Respondent be given until October 30, 2011 to remove Petitioner from the United States.

**IT IS FURTHER RECOMMENDED** that, if Respondent fails to remove Petitioner on or before **October 30, 2011**, Petitioner's Petition for Writ of Habeas Corpus, doc. 1, be **GRANTED** and Petitioner be released subject to appropriate conditions.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6, Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report

and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

DATED this 30th day of August, 2011.

_____
Lawrence O. Anderson
United States Magistrate Judge